UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BONNIE BARKLEY,

                              Plaintiff,          **05-CV-6492**
                    v.
                                                  **DECISION**
PENNYAN SCHOOL DISTRICT,                          **and ORDER**

                              Defendant.
_____

## INTRODUCTION

Plaintiff, Bonnie Barkley ("plaintiff" and/or "Barkley"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5 *et seq.*, ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law §296 ("HRL"), alleging retaliation by the defendant PennYan School District ("defendant" and/or "the School District") against the plaintiff for opposing discrimination. Specifically, plaintiff claims that after she filed two previous complaints with the New York State Division of Human Rights ("NYSDHR") due to discriminatory treatment, she was terminated from a Long Term Substitute Teaching Assistant position by the School District in violation of a contract.

Defendant denies plaintiff's allegations, and moves for summary judgment dismissing plaintiff's Complaint. According to the defendant, the Complaint should be dismissed in its entirety because, *inter alia,* (1) plaintiff's HRL claims are time barred; (2) her Title VII claims are barred by the doctrine of collateral estoppel; and (3) as a matter of law, plaintiff cannot establish that she has suffered any retaliatory conduct. Plaintiff argues that her claims are timely,

are not barred by collateral estoppel and that summary judgment should be denied since there are issues of fact which require a trial. For the reasons set forth below, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety.

## BACKGROUND

The relevant facts that the court deems undisputed, based on the Complaint, the parties' 56.1 Statements (as limited by invocation of the Local Rule),[1] and other materials submitted in connection with defendant's motion for summary judgment, are as follows:

---

[1] Preliminarily, this Court must review the requirements of the Local Rules of Civil Procedure. Local Rule 56 provides: "In any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be annexed to the notice of motion "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56.1(a). Defendant has complied with this rule. See Docket #28, Part 13. "The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. See id. 56.1(b). "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." See id. 56.1(c). In other words, the moving party must set forth the material facts that it contends are not in dispute, whereas the non-moving party must then set forth the material facts that she contends are in dispute (i.e., material facts as to which she contends that there is a genuine issue). Plaintiff, however, submitted a "Plaintiff's Response to Defendant's Statement of Material Facts" ("Responding Statement") that contained multiple repetitive statements and voluminous repetitive paragraphs, which failed to specifically controvert the defendant's Statement Of Material Facts ("DSMF") in many respects. See Docket #32, Part 8. Such failure to comply with Local Rule 56 does not "streamline the consideration of summary judgment motions by freeing [this Court] from the need to hunt through voluminous records without guidance from the parties." See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir.2001) (discussing Rule 56.1 of the Loc. Rules of Civ. Proc. for the Southern and Eastern Districts of New York which is essentially the same as Loc. Rule 56). Although plaintiff's Responding Statement sets forth some facts that appear to somewhat contradict DSMF, it nonetheless includes facts that are contained in DSMF i.e., facts about which there is no disagreement and that create no genuine issue of material fact. Consequently, plaintiff's Responding Statement has the effect of causing confusion and obscuring the record. As this Court held in Kuchar v. Kenmore Mercy Hosp., 2000 WL 210199, at *1 (W.D.N.Y.2000) "[w]hile the consequence of this miscue is minimal given the general consensus between the parties [as shown by defendant] as to the constituent facts of this case, where a discrepancy exists this Court is obligated to and will 'deem admitted' the [moving party's] version of the facts... [although] the Court is [also] obligated to and will believe the [non-moving party's] evidence and all justifiable inferences will be drawn in [her] favor." See Holtz, 258 F.3d at 73-74 ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules"); cf. Covelli v. Nat'l Fuel Gas Distrib. Corp., 2001 WL 1823584, at *1 (W.D.N.Y.2001) (holding that the district court "may, but is not required to, search the record for evidence which the party opposing summary judgment fails to point to in his Loc. Rule 56 statement. Inasmuch as the citations to the record in defendant's Statement support its factual assertions, this Court declines to search the record in an attempt to find evidence contradicting such when plaintiff has failed to do so....") (citations omitted).

Plaintiff, Bonnie Barkley, previously served as a substitute teacher for the School District on a number of occasions prior to the March 22, 2002 notice by the School District seeking applicants for the position of Long-Term Substitute Teaching Assistant at the Middle School computer lab. Barkley applied for the position on March 27, 2002 and on April 23, 2002, she started substituting in the teaching assistant position in the computer lab on a *per diem* basis. See Declaration of Charles E. Symons ("Symons Dec."), Ex. G. On April 29, 2002, the School District interviewed plaintiff for the Long Term Substitute Teaching Assistant position. Subsequently, the Superintendent Dr. Gene Spanneut ("the Superintendent") recommended that the School District appoint plaintiff to the position.

Barkley continued in the position of Long Tern Substitute Teaching Assistant on a per diem basis until the School District's Board of Education meeting held May 29, 2002. At that meeting, the president requested a motion to consider the Superintendent's recommendation to appoint plaintiff to the position. However, none of the Board members made a motion to consider the Superintendent's recommendation. Plaintiff claims that of all the items on the agenda for the May 29, 2002 meeting of the Board of Education, only her appointment failed to be moved for a vote. See Appendix to Local 56.1 Counter Statement of Material Facts ("Local 56.1 App."), Ex. T. While no motion was made for plaintiff's application for a long term substitute assistant position, the very next line item on the agenda for the May 29, 2002 Board of Education meeting was the appointment

of Margie Fuller to a long term substitute position wherein a motion was made for her appointment and was passed by a vote of 9-0. See id.

On May 30, 2002, the Superintendent and the Middle School Principal informed plaintiff that because the recommendation for her appointment to the Long Tern Substitute Teaching Assistant position had not been acted upon by the Board of Education, the plaintiff could not continue in her position in the computer lab. Shortly after the May 29, 2002 Board of Education meeting, the Superintendent and Board of Education learned that Barkley had falsified her employment application. See Affidavit of Gene Spanneut ("Spanneut Aff.), ¶2. Barkley denied intentionally falsifying her application and claimed that the School District "tricked" her into putting incorrect information into her application. See id., ¶6.[2] According to Spanneut's Affidavit, the School District periodically revises various forms it uses, including applications, in order to make the documents clearer and to conform with changing laws and regulations. See id., ¶7. The application form completed by the plaintiff in August 2001 was later revised and completed by plaintiff in February 2002 to comply with New York state regulations directing public school districts to obtain more detailed information of a job applicant's criminal history. See id. Accordingly, the change in the application and completed by the plaintiff in 2002 did not target the

---

[2]The employment application completed by plaintiff on or about August 28, 2001 asked if she had been convicted of a crime in the past ten years. Plaintiff answered "no." In the February 2002 application, the plaintiff also answered "no" when asked if she had been convicted of any violation of law (excluding minor traffic infractions). See Spanneut Aff., ¶5. Yet the record reveals that plaintiff was convicted of the crime of Assault in the Third Degree six years earlier in 1986 as the result of a dispute with a neighbor. See id., Ex. 4.

plaintiff but was in compliance with a normal business practice of the School District. See id.[3] It required her to reveal the truth about her criminal history - which she eventually did.

As a result of legal action taken by Barkley against the School District, she was examined under oath pursuant to General Municipal law Section 50-h on September 20, 2002. Plaintiff testified at length concerning what she alleged to be the circumstances surrounding false information contained in her employment application. See Spanneut Aff., Ex. 5. Barkley's explanations concerning the false information in her application were not credited by the Superintendent who concluded that he would not recommend her again for a position in the School District following the discovery of her falsified application. See id., ¶8. In June 2003, Barkley was elected as a member of the Board of Education and served in that capacity until June 2006. See id., ¶9. As a Board Member, plaintiff understood that she was no longer eligible to work as an employee in the School District. Accordingly, Barkley did not seek employment with the School District until she left the Board at the end of her term in 2006.

Prior to May 29, 2002, Barkley had filed two discrimination claims against the School District with the NYSDHR, both of which were dismissed. Plaintiff filed the initial charge of discrimination against the School District on April 3, 2000 alleging sex and age

---

[3]Dale Mitchell offers is opinion in his affidavit that he "suspected that [plaintiff] was obligated to fill out a second application in order for the School Board to trick her, and have her fill out her application wrong." See Dale Mitchell Affidavit ("Mitchell Aff.") ¶14. In addition, he claims Barkley was "therefore tricked into having false averment on her application." See id., ¶15. This conclusion is supported by the record.

discrimination after applying and not obtaining a position with the School District. Plaintiff received a notice of determination from the NYSDHR on her first charge of discrimination on April 12, 2001. Thereafter, plaintiff filed a second charge on June 22, 2001 alleging discrimination and retaliation against the School District. Specifically, plaintiff claimed that since the filing of her original charge of discrimination, she was refused work as a certified substitute teacher and only offered lower paying position as an un-certified substitute teacher. Plaintiff received a notice of determination from the NYSDHR on her second charge of discrimination on March 12, 2002. Plaintiff filed an appeal with the Commissioner of the New York State Board of Education ("Commissioner") on June 27, 2002 alleging that she was entitled to remain in her teaching position for its duration and required to be paid as a certified teacher for the time worked.

Plaintiff then filed a third charge of discrimination (which is the subject of the instant action) with the NYSDHR and contemporaneously with the Equal Employment Opportunity Commission ("EEOC") on or about June 28, 2002 claiming she was subject to discrimination and retaliation for having filed prior charges of discrimination.[4] Specifically, plaintiff alleged that she was hired for a long term teaching assistant position on April 22, 2002 and was terminated for no reason on May 30, 2002. Defendant argued to the

---

[4]While plaintiff claims she filed the claim on June 28, 2002, the records from the NYSDHR indicates that plaintiff filed a verified complaint with their agency on August 19, 2002.

NYSDHR that Barley's claims were barred by collateral estoppel/res judicata and by the doctrine of election of remedies. In addition, defendant argued that plaintiff's complaint filed with the Commissioner was an election of her remedies and that her NYSDHR complaint was, therefore, barred. The School District claims that the alleged facts relied upon by the plaintiff to support the Workers' Compensation retaliation complaint filed in March 2003, the complaint to the Commissioner of Education and the Small Claims court proceeding, which was appealed and dismissed in a May 2, 2003 decision by the Yates County Court rely upon the same facts alleged and relied upon by the plaintiff in her June 28, 2002 NYSDHR complaint.

Plaintiff claims that the NYSDHR determined that Barkley's charge of discrimination was not barred by collateral estoppel/res judicata due to a Small Claims court decision. The Small Claims court decision was dismissed because the plaintiff did not file a Notice of Claim in a timely manner.[5] See Symons Dec., Ex. L. However, the issue of retaliation was not addressed in the Small Claims Court determination. See id. With respect to Barkley's complaint with the Commissioner, the NYSDHR investigator's report found that "[t]here are no provisions in the Education Law prohibiting retaliation against an individual for opposition to discrimination. Therefore,

_____

[5]After not obtaining the Long Term Substitute Teaching Assistant position, Barkley brought a claim against the School District in Small Claims court alleging breach of contract because the Board of Education refused to approve the recommendation to appoint her to the position at the May 29, 2002 Board meeting. See Symons Dec., Ex. I, pp. 53-65. Barkley also filed a complaint with the New York State Workers Compensation Board claiming that she had been terminated from the Long Term Substitute Teaching position in violation of a contract in retaliation for filing a claim. The District also prevailed in this matter.

the [NYSDHR] is the proper forum to investigate complainant's claims of retaliation." See Local 56.1 App., Ex. H. Further, the report stated that members of the Board of Education were aware that Barkley had brought previous actions against the School District. While the board members articulated reasons such as fatigue, lateness of the hour and length of the meeting for not moving the question of plaintiff's appointment, none of these factors prevented the Board of Education from approving the appointment of another Long term Substitute teacher, which was the last item on the agenda. See id.

On December 15, 2003 after completing the investigation into plaintiff's claim, the NYSDHR determined that there was "PROBABLE CAUSE to believe that [defendant] engaged in or is engaging in unlawful discriminatory practice complained of." See Local 56.1 App., Ex. I.[6] The NYSDHR also recommended that a public hearing be conducted to ascertain whether there was merit to the retaliation claim contained in plaintiff's NYSDHR complaint. See Symons Dec., Ex. D. However, after the NYSDHR issued its probable cause determination, plaintiff requested that the NYSDHR terminate its administrative proceedings so that she could pursue the retaliation complaint in court. See id., Ex. E. Plaintiff's charge of discrimination was subsequently dismissed by the NYSDHR for administrative convenience on April 26, 2005. Thereafter, on June 23, 2005, the EEOC issued

_____

[6]On July 28, 2003, the Commissioner issued a decision on plaintiff's appeal where it determined that all of Barkley's claims were time-barred except those related to the substitute teaching assistant position. See id., Ex. L. In addition, the Commissioner found that plaintiff did not have a binding employment contract with the School District and that it had an unfettered right to terminate plaintiff as a substitute teacher's assistant unless she establishes termination for a constitutionally impermissible reason, or in violation of a statutory or contractual proscription. id.

plaintiff a Notice of Right to Sue statement. Following the termination of the NYSDHR's administrative proceeding and the EEOC notification, the plaintiff filed suit in this Court on September 21, 2005. See id., Ex. A.

## DISCUSSION

### I.  Defendant's Motion for Summary Judgment

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Once the movant has "'show[n]' or point[ed] out...that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). To discharge his burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. See Anderson, 477 U.S.

9

at 255; <u>Celotex Corp.</u>, 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. <u>See</u> <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir.1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." <u>See</u> <u>Savino v. City of New York</u>, 331 F.3d 63, 71 (2d Cir.2003) (quoting <u>Anderson</u>, 477 U.S. at 249-50, (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." <u>See</u> Fed.R.Civ.P. 56(e)(2); <u>see also</u> <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.")

## II. <u>Plaintiff's New York State Human Rights Law ("HRL") Claim</u>

Plaintiff concedes that her claim for retaliation under the HRL is barred by the statute of limitations. <u>See</u> Pl. Br. at 6. Accordingly, summary judgment is warranted and plaintiff's HRL retaliation claim is dismissed. Plaintiff's remaining cause of action is for retaliation under federal law. Thus, plaintiff's HRL

retaliation claim (Count II) is dismissed with prejudice and the Court will only address the Title VII retaliation claim (Count I).

### III. **Defendant's Collateral Estoppel and Res Judicata Argument**

### A.    **Collateral Estoppel--Issue Preclusion**

Defendant proposes the application of collateral estoppel which bars plaintiff from relitigating the issue of whether the School District violated a contract with the plaintiff as alleged in her June 28, 2002 NYSDHR complaint. See Def. Br. at 6. Pursuant to this doctrine, once a court has decided an issue of fact or law necessary to its judgment, federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." See Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982); 28 U.S.C. §1738. Thus, New York law must be applied to determine the preclusive effect of the Commissioner's decision. In Kremer, the Court held that a decision of the New York State Appellate Division, to affirm an administrative determination of the NYSDHR, was entitled to a preclusive effect on subsequent attempts by the plaintiff to re-litigate a Title VII claim in federal court. Id. at 485. However, the Court noted that an unreviewed administrative decision by a state agency, such as the NYSDHR, does not preclude trial de novo in federal court of the plaintiff's Title VII claims. Id. at 469-70; see also DeCinto v. Westchester County Med. Ctr., 821 F.2d 111, 114 (2d Cir.), cert. denied 484 U.S. 965 (1987).

Defendant asserts that plaintiff's claim that the School District violated a contract with Barkley (as alleged in both her June 2002 NYSDHR complaint and in this federal) was already dismissed by the Commissioner in its July 28, 2002 decision and therefore the claim is barred by the principle of collateral estoppel. See Def. Br. at 6. Defendant further argues that this Court should dismiss this Complaint in its entirety because it is premised on the same breach of contract claim which the Commissioner had already dismissed. See id. Under New York law an individual is barred from relitigating an issue if: (1) the issue as to which preclusion is sought is identical to the issue decided in the prior proceeding, (2) the issue was necessarily decided in the prior proceeding, and (3) the litigant who will be held precluded had a full and fair opportunity to litigate the issue in the prior proceeding. See Capital Telephone v. Pattersonville Telephone, 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13 (1982); see also Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500-01 (1984). "The burden of establishing the first two elements rests upon the proponent of preclusion, but as to the lack of a full and fair opportunity to contest, the burden is on the opponent." See Capital Telephone, 56 N.Y.2d at 18.

The defendant asserts that the Commissioner's determination that the "Board of Education has the unfettered right to terminate a substitute teacher or teaching assistant's employment for any reason unless the employee establishes that she was terminated for a constitutionally impermissible reason, or in violation of a statutory

or contractual proscription," precludes the plaintiff from asserting in this action that her job was terminated as a result of unlawful retaliation in violation of Title VII. Defendant argues that since the Commissioner found no binding contract existed between the School District and plaintiff and further that the June 2002 NYSDHR complaint (which forms the basis of this Complaint) is premised on the alleged breach of that contract by the School District in retaliation against plaintiff, the first cause of action therefore should be dismissed.

Plaintiff argues that she was not given a full and fair opportunity to litigate her issues when she petitioned her cause and received a determination from the Commissioner. See Pl. Br. at 8. The plaintiff further argues that the Commissioner's finding, even if accepted by this court, would only operate to preclude litigation on the issue of whether she had a binding employment contract with defendant. Moreover, plaintiff asserts that the Commissioner did not resolve any of the issues concerning the alleged unlawful retaliation by the School District against her. See id.

This court finds that the plaintiff is collaterally estopped from relitigating the issue of breach of contract since the Commissioner found that there was no binding contract between Barkley and the School District.

**B.    Claim Preclusion-Res Judicata**

Under the Claim Preclusion/Res Judicata analysis, "once a claim is brought to a final conclusion, all other claims arising out of the

same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." See O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981); see also Smith v. Russell Sage College, 54 N.Y.2d 185, 192-93 (1981). "This bar against later claims based upon the same cause of action is, however, subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation." See Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir.1986) (emphasis added) (citing McLearn v. Cowen & Company, 48 N.Y.2d 696, 698 (1979)).

Plaintiff essentially asserts that her Title VII suit is not barred by any of the prior proceedings, even though the claims are based on the same factual grouping, because she could not have raised the Title VII retaliation claim in any of those forums. The defendant maintains that the federal suit is barred because the Commissioner already ruled that the School District did not violate any of the plaintiff's statutory rights with respect to the events referenced in plaintiff's petition filed with the Commissioner, which included circumstances alleged in the June 2002 NYSDHR complaint. Defendant's argument must fail. As is evident by a reading of the Commissioner's decision, plaintiff's appeal was dismissed on procedural grounds and not substantive grounds. In addition, regarding plaintiff's complaint with the Commissioner, "[t]here are no provisions in the Education Law prohibiting retaliation against an individual for opposition to discrimination. Therefore, the [NYSDHR] is the proper forum to

14

investigate complainant's claims of retaliation." Accordingly, plaintiff's Title VII retaliation claim could not have been included in the Commissioner's decision.[7] Therefore, the doctrine of res judicata does not act as a bar to plaintiff's Title VII claim in this suit.

## IV. __Title VII Limitations Period__

Defendant contends that the only alleged act of retaliation that can properly be considered by this Court is that which took place on May 30, 2002 as referenced in plaintiff's NYSDHR complaint. See Def. Br. at 8. In addition, defendant argues that any acts of alleged retaliation not set forth in the June 2002 NYSDHR complaint are barred by the statute of limitations. See id. at 7. Plaintiff does not directly contradict defendant but argues that any claims of discrimination and retaliation that the Court deems not actionable are still admissible as background evidence. See Pl. Br. at 10. Prior to 2002, several courts have allowed otherwise untimely charges of discrimination to be heard if they constituted part of a continuing course of conduct, provided that a portion of the conduct complained of occurred within the claims limitation period. In 2002, however, the Supreme Court held that discrete acts of discrimination which allegedly occurred outside the limitations period may not be heard even if those acts relate to conduct that occurs within the limitation period. See Nat'l RR Passenger Corp. v. Morgan, 536 U.S.

---

[7]Further, the Small Claims court decision was dismissed because the plaintiff did not file a Notice of Claim in a timely manner. See id. However, the issue of retaliation also was not addressed in the Small Claims Court determination. See id.

101, 108-09 (2002) (reaffirming that "strict" adherence to the 300 day time limit is the "best guarantee of evenhanded administration of the law").

As a result, even where the plaintiff claims that a discrete discriminatory act that occurred outside of the statutory time period is related to an act that occurred within the statutory period, the claim regarding the untimely act may not be adjudicated by this court. See Ledbetter v. Goodyear Tire and Rubber Co., 550 U.S. 618 (2007) (claim that poor performance evaluation (which was allegedly given because of discriminatory animus towards plaintiff, and which led to disparity in pay over the course of several years), was not actionable as part of a continuing series of discriminatory acts where the evaluation occurred more than 300 days prior to the administrative complaint being filed). The "continuing violation" doctrine is not applicable in this case. Under the doctrine of continuing violations, the 300-day period commences on the date on which the final discriminatory act occurred when the acts alleged are part of a continuing series of acts or pattern of behavior. See Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993) (holding that under the continuing violation exception to the statute of limitations, if a plaintiff files an EEOC charge that is timely to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone).

An act such as termination of a temporary employee, however, is a "discrete" act, and as such, is a separate incident of discrimination that must be acted upon by filing a formal complaint regardless if it is one of many allegedly discriminatory acts that took place over a period of time. See Morgan, 536 U.S. at 108; Bailey v. Synthes, 295 F.Supp.2d 344, 354 (S.D.N.Y. 2003)("[D]iscrete acts [of discrimination] include" "refusal to hire.") In this case, plaintiff's June 2002 NYSDHR complaint alleges that plaintiff was let go on May 30, 2002, which is a separate and distinct act from the two prior discrimination claims filed by plaintiff against the School District with the NYSDHR. Accordingly, I find that the acts about which plaintiff complains that occurred outside of the 300-day period are barred by the statute of limitations as a matter of law.[8]

## V. **Plaintiff has failed to establish a Prima Facie Case of Retaliation**

As stated above, plaintiff acknowledges that her only remaining cause of action in this suit is for retaliation under federal law. Plaintiff claims that she was retaliated against by the defendant because she filed two previous complaints with the NYSDHR following which, she was terminated from a Long Tern Substitute Teaching

---

[8]Plaintiff filed the initial charge of discrimination against the School District on April 3, 2000 alleging sex and age discrimination after applying and not obtaining a position with the School District. Thereafter, plaintiff filed a second charge on June 22, 2001 alleging discrimination and retaliation against the School District. Acts occurring outside the limitations period that are significantly far apart from each other are "fatal" to a continuing violation argument. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (holding that the plaintiff could not assert a continuing violation when there was a three year gap in time from one allegation to the next). Even after filing these two notices with the NYSDHR, the School District still asked plaintiff to serve as the Long Term Substitute Teaching Assistant at the Middle School computer lab in April 2002 on a per diem basis. In fact, the Superintendent recommended that the School District appoint plaintiff to the position. These actions do not form the basis of a continuing violation claim.

Assistant position by the School District in violation of a contract. Because I find that plaintiff has failed to state a claim for retaliation, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

Retaliation claims brought pursuant to Title VII are analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas, 411 U.S. at 802. Under this test, for a plaintiff to prevail she must first establish a prima facie case of discrimination by showing: (1) she engaged in a protected activity; (2) she was performing her occupational duties satisfactorily;(3) she was subjected to an adverse employment action; under (4) circumstances giving rise to an inference of unlawful discrimination. See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991); Schanbel v. Abramson, 232 F.3d 83 (2d Cir.2000). Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason ("LNDR") for the adverse employment action. Once the defendant proffers a LNDR, the burden then shifts back to the plaintiff to show that the defendant's LNDR was pretextual and that the defendant's real motivation was discriminatory. See id.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected

18

activity and adverse action. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted).

### Plaintiff has failed to establish a causal connection between the protected activity and her termination

Assuming, arguendo that the plaintiff could establish that she engaged in a protected activity, and that she has established that she was subjected to an adverse employment action, defendant argues that plaintiff still cannot establish a causal connection between the alleged adverse action and the protected activity. See Def. Br. at 10. Defendant contends that because there was no employment contract in this case,[9] the only event that could possibly be deemed an adverse employment action by the School District would be the refusal to hire Barkley for the Long Term Substitute Teaching Assistant position in the computer lab. See id. Thus, defendant argues that plaintiff's retaliation claim must fail. I find that plaintiff has failed to establish a causal connection between the protected activity and her discharge from the School District.

Defendant argues that plaintiff is unable to establish a prima facie case of retaliatory discrimination because her employment was terminated at least eleven months after her last complaint with the NYSDHR. See Def. Br. at 11. The Superintendent and the Middle School

---

[9]As noted in Point III.A. The Commissioner found that there was no binding contract between Barkley and the School District.

Principal met with the plaintiff on May 30, 2002 and informed her that because the recommendation for her appointment to the position had not been acted upon at the Board of Education meeting, she could not continue in the position. See id., at 10. Moreover, her complaint alleging discrimination and retaliation against the defendant had been previously filed by the plaintiff with the NYSDHR eleven months before the May 30, 2002 meeting, on June 28, 2001. Thus, Plaintiff is unable to show a close temporal proximity between the protected activity and the discriminatory treatment. See Gordon v. New York City Board of Education, 232 F.3d 11, 115 (2d Cir.2000).

There is no dispute that there was at least an eleven month gap between the time that plaintiff filed her last complaint with the NYSDHR on June 28, 2001 and when she was notified on May 30, 2002 that her long-term substitute teaching position would not be continued. It is important to note that the School District continued to employ plaintiff per diem as a substitute teacher on a regular basis during the 2001-2002 school year following her filing two previous complaints with the NYSDHR. Also, the plaintiff is not entitled to an inference of causation because the time lapse between the two critical dates is conclusive. See James v. Newsweek, 1999 WL 796173, at *15 (S.D.N.Y.1999) (Several courts in this Circuit have held that where an adverse employment action occurs long after the plaintiff engaged in a protected activity, such an action cannot support an inference of retaliatory discrimination; in this case four months was found too remote); Woods v. Enlarged City Sch. Dist. of

Newburgh, 473 F.Supp.2d 498, 529 (S.D.N.Y.2007) (five month time lapse precludes a finding of causal connection). Therefore, because plaintiff cannot demonstrate a casual connection between the protected activity and the adverse action requirement of the prima facie retaliation claim, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed with prejudice.

Plaintiff's argument that she was asked to fill out a new application form in February 2002 when she had already completed one in August of 2001 establishes direct evidence of a discriminatory animus, is clearly not supported by the record. Plaintiff claims that the School District tricked her into filing a revised application of employment which required her to reveal that she had been convicted of the crime of assault in the third degree in 1986 following a dispute with a neighbor. However, the revised application in February 2002 was explicit and required her to answer whether she had been convicted of <u>any</u> violation of law (excluding minor traffic infractions) or whether there were any pending criminal charges against her. Aff., ¶ 5. In support of her argument, plaintiff attaches an affidavit from a previously undisclosed witness, Lt. Dale Mitchell, a retired Yates County deputy Sheriff, which states that he "suspected that [plaintiff] was obligated to fill out a second application in order for the School Board to trick her, and have her fill out her application wrong." <u>See</u> Mitchell Aff., ¶14. In addition, Mitchell concludes that Barkley was "therefore tricked into having false averment on her application." <u>See</u> <u>id.</u>, ¶15. It is

incomprehensible how this Court could assign any probative value to plaintiff's argument since she was required to tell the truth about her prior criminal history in both questionnaires. There was no change in her criminal history which was established as a result of her conviction in 1986. The only change was that the second questionnaire was more explicit and required her to reveal whether she had been convicted of any violation of law except for a traffic infraction. The fact that she finally told the truth about her past criminal history in the second questionnaire was not the result of a "trick" to reveal her criminal history. She was required to answer the questionnaire truthfully in both instances in 2001 and 2002.

Defendant claims that it has been prejudiced by plaintiff's failure to disclose reliance upon Lt. Mitchell as a witness and because plaintiff failed to disclose his identity prior to the close of discovery.[10] See Def. Reply Br. at 2. Federal Rules of Civil Procedure 26(a) requires parties to provide "the name of...each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses...identifying the subjects of the information." Fed.R.Civ.P. 26(a)(1)(A). Federal Rule of Civil Procedure 26(e)(1) requires that discovery be supplemented if information later acquired would have been subject to Rule 26(a)(1) mandatory disclosure requirements. See Fleet Capital Corp. v. Yamaha Motor Corp., 2002 WL 31108380, at *2

---

[10]Defendant further claims that had plaintiff identified Lt. Mitchell as a witness in a timely manner, defendant would have had an opportunity to depose him or otherwise investigate his possible relevance or lack thereof to this action and adopt an appropriate defense to this aspect of the case. See id.

(S.D.N.Y.2002). It is well settled that the exclusion of evidence is "an extreme sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." See Meyers v. Pennypack Woods Home Ownership Assn., 559 F.2d 894, 905 (3d Cir.1977).

Under the circumstances, the Court will disregard Lt. Mitchell's affidavit. See Fleet Capital Corp., 2002 WL 31108380 at *2 (quoting 6 Moore's Federal Practice § 26.27[2][d] at 26-93) ("[A] failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their knowledge well before trial"). In this case, defendant had no reason to know during the discovery period that Lt. Mitchell was to be a witness and might have information relevant to plaintiff's claims, and thus was denied the opportunity to depose him. See id. In addition, even if the Court were to consider Lt. Mitchell's untimely affidavit, his testimony would be irrelevant because the Court has already found that plaintiff failed to establish a causal connection between the protected activity and her discharge from the School District. Further, the fact that the School District revised its employment application after Barkley filled out an application in August 2001 simply cannot be deemed to constitute evidence of a causal connection between Barkley's discrimination complaints and the fact that she not hired for a position in May 2002. The revision of the application was the result of routine business practice, which required the plaintiff to reveal the truth about her criminal

background. Accordingly, defendant's motion for summary judgment is granted.

**VI.** **Legitimate, Non-discriminatory Reason**

Defendant argues that regardless of whether plaintiff is able to state a prima facie case of retaliation, the School District has stated a LDNR justifying plaintiff's removal from the computer lab after not being appointed to the Long Term Substitute Teaching Assistant position. Plaintiff could not serve in her position after the Board of Education did not approve the Superintendent's recommendation to hire the plaintiff. See Def. Br. at 12. As such plaintiff could not continue working as a per diem substitute assistant on an extended basis. See id. Moreover, defendant contends that there is no evidence to indicate that the Board of Education's determination not to act favorably on the Superintendent's recommendation for plaintiff's appointment was the product of retaliatory animus. See id.

Defendant cites to the persuasive testimony of Board member Nancy Scher regarding reasons for not considering the Superintendent's recommendation to appoint plaintiff.[11] The testimony

---

[11]Q: Why didn't you move for a vote on Ms. Barkley for the computer lab position?
***
A: Okay. Prior to this...I was volunteering in the elementary school. I had no idea that there was a phys ed position open because positions do not usually come to the Board until the process of screening and interviewing has been carried out... I was walking down the hall to near the kindergarten wing...Ms. Barkley was in the primary gym and apparently, but I was totally unaware of it, Ms. Barkley had an interest in a phys ed position at this time and I gather things were not progressing as Ms. Barkley wished and Ms. Barkley was outside the ... primary phys ed room[.] I was coming down, but what I clearly remember is students passing in the hall...and Ms. Barkley accosting me, not physically, but basically pushing me against the wall and expressing her displeasure at the way the phys ed position was going. I was, frankly, mortified and could not understand why any adult would carry on this type of loud conversation in full view and hearing of classes of children walking past. It just perplexed the stuffings out of me. It took me a couple of days to recover from the encounter. So...it disturbed me greatly to think that this woman

of Ms. Scher reveals that she did not favor having plaintiff occupy a long-term position because of plaintiff's demonstrated lack of self-control and intemperate behavior. See id. Further, the affidavit of Margaret S. Murphy also reveals that in her conversations with plaintiff, she "seemed irrational and made little sense...and [a]t times she rambled...creating the impression, if not the fact, that she was terribly confused and emotionally distraught." See Margaret S. Murphy Affidavit ("Murphy Aff"), ¶8; see also Robert Cirencione Aff., ¶6. Based on the undisputed evidence in the record, defendant has proffered a LNDR justifying plaintiff's dismissal. The record amply supports that material issues of fact do not exist as to whether or not retaliatory animus played at least a part in the decision to discharge the plaintiff. See Pl. Br. at 16.

In papers submitted in opposition to defendant's motion for summary judgment, plaintiff attempts to rely on comments allegedly made by members of the Board of Education and notes made by an investigator from the NYSDHR that purport to summarize unsworn comments made by Board members during an informal discussion with the investigator. See e.g. Affidavit of John Ellis ("Ellis Aff.") and 56.1 App., Ex. H. It is well settled, however, that where a summary judgment motion is supported or opposed by affidavits, those "affidavits shall be made on personal knowledge, shall set forth such

_____

who had not physically, but backed me into a wall, speaking to me in ways I was not accustomed to be spoken to, might be responsible for the children in our District. And for that reason, and that reason alone, I chose not to move the vote.
See Symons Dec., Ex. H, T:31:3-33:17.

facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e)." '[H]earsay testimony...that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e) ] affidavit.'" See Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir.1986) (quoting 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed.1985)); see, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir.1999); Contemporary Mission, Inc. v. USPS, 648 F.2d 97, 105 n. 11 (2d Cir.1981).

In order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that "set[s] forth specific facts" showing a genuinely disputed factual issue that is material under the applicable legal principles. Fed.R.Civ.P. 56(e); see, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir.2004); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985); 10B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738, at 346-56 (3d ed.2006). A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, see, e.g., Kulak, 88 F.3d at 71, or based on speculation, see, e.g., id. ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor,...conclusory statements, conjecture, or speculation by the party resisting the

motion will not defeat summary judgment."); ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir.) ("conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment"), cert. denied, --- U.S. ----, 128 S.Ct. 288 (2007); McPherson v. New York City Dep't. of Educ., 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("speculation alone is insufficient to defeat a motion for summary judgment").

Here, Ellis' Affidavit summarizing what he was told by Cirencione or what he heard is hearsay that would not be admissible at a trial. Since he presented no sworn statement from Robert Cirencione, plaintiff has failed to adduce any evidence sufficient to create a genuine issue to be tried on the basis of Ellis' contention that the School District was dishonest and deceived plaintiff. Accordingly, summary judgment dismissing the retaliation claim is appropriate. The same reasoning holds true with the notes made by an investigator from the NYSDHR that summarize unsworn comments made by unidentified members of the Board of Education during an informal discussion with the investigator. These statements are devoid of any specifics, are conclusory based on hearsay and are insufficient to defeat a summary judgment motion. See Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir.1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment"), cert. denied, 530 U.S. 1242 (2000).

## CONCLUSION

For the reasons set forth above, I grant defendant's motion

for summary judgment, and dismiss plaintiff's Complaint with prejudice.

   **ALL OF THE ABOVE IS SO ORDERED.**

                                    s/Michael A. Telesca
                                 MICHAEL A. TELESCA
                                 United States District Judge

Dated:     Rochester, New York
           August 25, 2009